**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

BROEGE, NEUMANN, FISCHER & SHAVER, LLC
Timothy P. Neumann, Esq. [NJ Bar # 005081973]
Geoffrey P. Neumann, Esq. [NJ Bar # 059702019]
25 Abe Voorhees Drive
Manasquan, New Jersey 08736
Tel: (732) 223-8484
Email: timothy.neumann25@gmail.com
geoff.neumann@gmail.com

*Attorneys for Debtor-in-Possession*
*Hamilton Street Associates, LLC*

| | |
|---|---|
| In Re<br><br>**HAMILTON STREET ASSOCIATES, LLC**<br><br>Debtor. | CHAPTER 11<br><br>CASE NO.: 26-20342/CMG<br><br>Judge: Hon. Christine M. Gravelle |

**VERIFIED APPLICATION IN SUPPORT OF DEBTOR'S MOTION PURSUANT TO SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 6006 FOR AN ORDER APPROVING THE SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS**

Hamilton Street Associates, LLC (the "Debtor") by and through its attorneys, Broege, Neumann, Fischer & Shaver, LLC, by the instant motion (the "Motion"), hereby requests that the Court enter an Order pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 for an order approving the sale of certain of the Debtor's assets and assignment of contracts, free and clear of liens, claims and encumbrances, and the assumption and assignment of executory contracts and in support thereof, respectfully represents as follows:

## PRELIMINARY STATEMENT

1. By this Application, the Debtor seeks to sell its mixed use residential/commercial building located at 510 Hamilton Street, Somerset, New Jersey (the "Property"), free and clear of liens, claims and

encumbrances pursuant to 11 U.S.C. § 363(f), but expressly subject to all existing residential tenant leases, and to assume and assign those tenant leases as executory contracts under 11 U.S.C. § 365.

2. The Property contains approximately 82 residential units occupied by tenants pursuant to leases directly with the Debtor or subleases with the Debtor's tenants (each a "Tenant Lease" and collectively, the "Tenant Leases") and one commercial lease ("Commercial Lease"). All leases are currently held by the state court-appointed receiver (the "Receiver").

3. The Tenant Leases do not prohibit or restrict assignment by the landlord but do restrict assignment by tenants. The Debtor seeks to preserve tenancies and maximize estate value by selling the Property as a performing, occupied asset.

4. Contrary to a sale that would strip leasehold interests under § 363(f), the Debtor seeks to assume and assign the Tenant Leases under § 365(b) and (f). The Debtor will cure any monetary defaults, including compliance with N.J.S.A. 46:8-19 to 46:8-21 regarding security deposits, and the Purchaser will provide adequate assurance of future performance as required by §§ 365(b)(1)(C) and 365(f)(2)(B).

**JURISDICTION**

5. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).

6. Venue of this case and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

7. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), including without limitation, subsections (A), (M), (N) and (O).

8. The statutory basis for the relief requested herein are sections 363 and 365 of the Bankruptcy Code, Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and D.N.J. LBR 6004-2 and 6004-3.

## BACKGROUND

9. On September 10, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code ("Petition").

10. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor is continuing in the management of its businesses and possession of its property as a debtor in possession. No trustee, examiner or creditors' committee has been appointed in the Chapter 11 Case.

11. The Debtor is a limited liability company of the State of New Jersey. It has two members: Perry Pavicic owns an 85% membership interest and pursuant to an Amended and Restated Limited Liability Company Agreement ("Operating Agreement"), is the Manager of the Debtor.

12. The remaining 15% membership interest is owned by G2 Finance, LLC, a New Jersey limited liability company.

13. The Property is improved by a mixed-use building with underground parking, commercial space on the ground level, and 82 residential apartments above. There are 35 two-bedroom apartments, 22 one-bedroom apartments, and 25 studio apartments.

14. The Property is subject to a mortgage dated December 17, 2019 in the original principal amount of $20,605,000.00 in favor of Bank of Hope (the "Bank"), which was increased to $24,000,000.00 by a Mortgage Modification and Extension Agreement dated May 25, 2022.

15. The Bank initiated an action in the Superior Court of New Jersey, Chancery Division, Somerset County, Docket No. SWC-F-006722-25 to foreclose its mortgage (the "Foreclosure Action")

16. The commercial space is 10,000 square feet and comprised of two units, one occupied by an operating restaurant, and the other and larger space formerly occupied by day care center, but presently vacant.

17. G2Elite Property LLC ("G2Elite") is a New Jersey limited liability company and managed the Property from approximately July 2023 until August 1, 2025, when a receiver, Tim Paulus of Wick Companies, LLC (the "Receiver"), was appointed in the Foreclosure Action. Upon information and belief, G2Elite is owned and controlled by John Park.

***Leases***

18. Honors Review Princeton, LLC ("Honors Review") is a New Jersey Limited Liability Company. Honors Review was joined as a party defendant in the prepetition Foreclosure Action filed by Bank of Hope by virtue of a First, Fourth Floor Master Lease with the Debtor dated April 26, 2019 for the first and fourth floors of the Property, having a term of 120 months starting on July 15, 2019 and ending on July 14, 2029 ("Honors Review Master Lease").

19. Honors Review executed an Amendment to the Honors Review Master Lease with the Debtor on December 30, 2021. Effective January 1, 2022, Honors Review agreed to pay the Debtor $72,300.00 per month as rent, with an annual increase of 3% ($867,600.00 annually). Except as expressly stated in the Amendment, all other terms and conditions of the Honors Review Master Lease remained in full force and effect, and the Amendment was binding upon the parties, their heirs, successors and assigns.

20. Lighthouse On, LLC ("Lighthouse") is a New Jersey Limited Liability Company. Lighthouse was joined as a party defendant in the Foreclosure Action by virtue of a Second, Third Floor Master Lease with the Debtor dated April 26, 2019 for the second and third floors of the

Property, having a term of 120 months starting on July 15, 2019 and ending on July 14, 2029 ("Lighthouse Master Lease").

21. Honors Review executed an Amendment to the Second and Third Floor Master Lease with Debtor on December 30, 2021 (Lighthouse Master Lease and the Princeton Review Amendment collectively referred to as "Lighthouse/Princeton Master Lease"). Effective January 1, 2022, Honors Review agreed to pay the Debtor the monthly sum of $98,000.00 with an annual increase of 3% $1,176,000.00 annually). Except as expressly stated in the Amendment, all other terms and conditions of the Lighthouse Lease remained in full force and effect, and, by its terms the Lighthouse/Princeton Master Lease was binding upon the parties, their heirs, successors and assigns.

22. KBG Express Somerset, LLC was joined as a party defendant in the Foreclosure Action by virtue of a Lease Agreement ("KBG Lease") with the Debtor dated December 30, 2021 ("KBG Lease"), commencing on January 1, 2022 with monthly rent of $6,400.00 ($76,800.00 annually), increasing to monthly rent of $6,592.00 ($79,104.00 annually) in the fourth and fifth years, and ending on December 31, 2026, for Suite B on the first floor of the Property. By its terms, this KBG Lease is superseded and replaced by a Lease Agreement with the Debtor.

23. KBG Express is owned by Yohan Park, the son of John Park who is the beneficial owner of a 15% membership interest in the Debtor.

24. Little Honors, LLC ("Little Honors") was joined as a party defendant in the Foreclosure Action by virtue of a Lease Agreement with the Debtor dated December 30, 2021 ("Little Honors Lease") of the space on the first floor of the Property known as the First Floor Unit, commencing on January 1, 2022 with monthly rent of $23,400.00 ($280,800.00 annually), increasing to $23,690.00 per month ($284,280.00 annually) in the fourth and fifth years, and ending on December 31, 2026. Little Honors operated a day care center but breached its lease and vacated the premises.

25. The Honors Review and Lighthouse master leases are no longer in effect, and tenants have leases directly with the landlord or receiver. The KBG lease is maturing (12/31/2026). Little Honors has been evicted.

26. The residential tenants may have signed leases with Honors Review or Lighthouse or perhaps the Receiver. All residential tenants will be served with this motion irrespective of whether their lease is with a nondebtor entity. The universe of current tenants of the Property is set forth on the rent roll provided by the Receiver, a copy of which is annexed hereto as **Exhibit** A.

***Proposed Sale of the Property***

27. The Debtor has entered into a contract to sell the Property to Coppersen, LLC, a New Jersey Limited Liability Company ("Coppersen" or "Purchaser"), having an address of 617 Johnston Terrace, Staten Island, NY 10309 (the "Contract"). The Purchaser intends to acquire the Property as a going-concern rental property, assume all Tenant Leases, and continue to perform all obligations of landlord thereunder A copy of the Contract is annexed hereto as Exhibit B. The essential terms of the contract are the following:

| | |
|---|---|
| Sales Price | $24,000,000.00 |
| Deposit due upon signing | $1,000,000.00 |
| Mortgage Financing | $17,500,000.00 |
| Cash Balance payable at Closing | $5,500,000.00 |
| Contingencies | Obtaining mortgage within 45 days |
| Closing Date | 30 days after contingencies satisfied |
| Broker Commission | None |

28. The Contract requires the Debtor to obtain an order approving the sale which directs the Receiver to deliver to Purchaser at Closing possession of the Property and all leases, tenant security deposits (together with any interest required by law), rents allocable to periods after Closing, keys, books, records, service contracts and operating information in the Receiver's possession or control, and provide that the receivership shall terminate as to the Property upon Closing.

29. No consents or approvals, other than those expressly set forth herein, are required for the Debtor to consummate the Contract.

30. Approval of the Motion at this time is in the best interests of the Chapter 11 estate, creditors, and other parties-in-interest.

**RELIEF REQUESTED**

31. By this Application, Debtor requests entry of an order, substantially in the form of the proposed order submitted with this Motion (the "Sale Order"):

a. Authorizing sale of the Property pursuant to § 363(b) and (f), free and clear of liens, claims, interests and encumbrances, but expressly SUBJECT TO the Tenant Leases and tenants' possessory rights;

b. Authorizing assumption of the Tenant Leases as executory contracts pursuant to § 365(a) and (b);

c. Authorizing assignment of the Tenant Leases to Purchaser pursuant to § 365(f), with Purchaser providing adequate assurance of future performance pursuant to §§ 365(b)(1)(C) and 365(f)(2)(B);

d. Finding Purchaser is a good faith purchaser under § 363(m);

e. Directing that no brokerage commission be paid to the Receiver, Wick Companies, LLC, or any affiliate from the proceeds of the sale;

f. Waiving the 14-day stays under Bankruptcy Rules 6004(h) and 6006(d), so that the Sale Order is effective immediately upon entry;

g. Granting related relief.

**BASIS FOR RELIEF - § 363 SALE**

32. Section 363(b) permits sale outside ordinary course where there is a sound business purpose. *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Abbotts Dairies*, 788 F.2d 143 (3d Cir. 1986). Sale of the Property will maximize value, preserve jobs, preserve affordable housing, and permit funding of a plan. Sale as occupied avoids vacancy loss and rejection damages.

33. The Debtor proposes sale subject to Tenant Leases, not free and clear of them. Liens will attach to proceeds to the extent of their validity. Any lienholder's rights to proceeds are preserved.

34. The Debtor has demonstrated both (i) good, sufficient, and sound business purpose and justification; and (ii) compelling circumstances for the Sales pursuant to 11 U.S.C. § 363(b).

35. A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities in accordance with the Motion.

36. The Purchase Price was negotiated, proposed and entered into by the Debtor and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtor nor the Purchaser have engaged in any conduct that would cause or permit the Sale to be avoided under 11 U.S.C. § 363(n).

37. The principal of Coppersen is Frank Coppotelli. Frank Coppotelli has developed properties in the same geographic area as the Property and came to know Perry Pavicic because of their common interests as real estate developers in the same vicinity. See ¶ 59, infra.

38. The Purchaser is a good faith purchaser as set forth in 11 U.S.C. § 363(m) and, as such, is entitled to all of the protections afforded thereby. The Purchaser has and will continue to act in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transaction at all times after the entry of this Order.

39. The Purchase Price to be paid by the Purchaser under the Contract was negotiated at arm's-length and constitutes fair and reasonable consideration for the Property. The terms and conditions set forth are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding the Debtor or their creditors under any applicable laws.

40. The Purchaser would not have offered the Purchase Price, nor agreed to purchase the Property and would not consummate the transaction contemplated herein, if the sale was not free and clear of all liens, claims, encumbrances, and interests of any kind or nature whatsoever, or if Purchaser would, or in the future could, be liable for any liens, claims, encumbrances or interests.

41. The Debtor requests that the assets which are being sold, and that contracts being assigned (collectively, the "Sale Assets"), will be sold and assigned free and clear of all liens, claims, encumbrances and interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) have been satisfied. Any non-debtor parties with interests in the Sale Assets who did not object, or who withdrew their objections, to the Sale Motion have consented, or are deemed to have consented, pursuant to 11 U.S.C. § 363(f)(2). Any non-debtor party with interests in the Sale Assets who does object falls within one or more of the other subsections of 11 U.S.C. § 363(f) and will be adequately protected by having their interests, if any, attach to the cash proceeds of the sale ultimately attributable to the property against or in which they claim an interest.

42. Section 363 of the Bankruptcy Code provides that a trustee "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Moreover, Section 105(a) of the Bankruptcy Code, in pertinent part, states that "the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

43. Section 363(b) permits sale outside ordinary course where there is a sound business purpose. *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Abbotts Dairies*, 788 F.2d 143 (3d Cir. 1986). A sale of a debtor's assets is authorized if predicated upon a sound business purpose. See *In re Martin*, 91 F.3d 389 (3d Cir. 1996); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991).

44. In addition to a sound business purpose, the Third Circuit requires that there be adequate and reasonable notice of the sale and a fair and reasonable price or good faith negotiations with the purchaser. See *In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir. 1986). The Court is required to find that the purchaser has acted in good faith and that the proposed sale has been arrived at arm's length and free of fraud, collusion or improper conduct. *Id.* at 147 *(citations omitted).* The bona fides of the purchaser is like that of a buyer at a judicial sale:

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*Id.* (quoting *Rock Industries,* 572 F.2d at 1198). "[T]raditionally, courts have held that 'fair and valuable consideration is given in a bankruptcy sale when the purchaser pays 75% of the appraised value of the assets.'" *Abbotts Dairies*, 788 F.2d at 149 (quoting *Rock Industries*, 572 F.2d at 1198); *In re Karpe,* 84 B.R. 926, 933 (Bankr. M.D. Pa. 1988).

45. The sale of the Sale Assets satisfies the "good faith" prong of the *Abbotts Dairies* test. The

Debtor has fully disclosed and requested the Court's approval of the sale and has provided comprehensive notice of the sale as discussed below. *See In re Colony Hill Assoc.,* 111 F.3d 269 (2d Cir. 1997) (determination of "good faith" is based on traditional equitable principles, including whether there has been full disclosure to the Bankruptcy Court). To ensure that the Debtor receives the maximum value for the Sale Assets and that the purchase price the estate realizes is fair and reasonable, the Sale Assets have been marketed and the sale of the Sale Assets to the Purchaser is expressly subject to higher and better offers.

***The Proposed Sale Satisfies the Abbotts Dairies Factors***

46. Consideration of the above factors in this case establishes that the proposed sale should be approved. The Debtor has provided accurate and reasonable notice of the sale to all persons and entities that have expressed an interest in purchasing the Sale Assets. The Debtor is hopeful that, as a result of this notice, interested purchasers will be encouraged to attend the Sale Hearing and engage in competitive bidding.

47. The consideration being tendered for the estate's interest in the Assets is fair and reasonable compared to the fair market value of the property when evaluated under the totality of the circumstances.

48. The Receiver has stated that he engaged in an extensive marketing process. See Certification of Tim Paulus filed September 25, 2026 (Dkt. 18-1). The Receiver procured an offer of $23,500,000.00 from AV Hamilton, LLC. See copy of the Bank's state court motion to approve the Receiver's contract (Dkt. 18-19). The Coppersen offer is $500,000 more than the offer made to the Receiver by AV Hamilton, LLC. Additionally, the state court's May 8, 2026 Order permits the Receiver, through its affiliate Wick, to collect a 6% commission upon a sale, which on the AV Hamilton contract would be $1,410,000. The delta between the Coppersen offer and the Receiver's contract is therefore $1,910,000. The Coppersen offer is far superior to the Receiver's contract.

49. The Bank's own Newmark appraisal, with an effective date of November 18, 2025, opined that the value of the Property "as is" was $26 million. The Purchaser's offer is approximately 92% of appraised value, well above the floor of 85% of appraised value that Honors Review and the other Leasehold Defendants themselves proposed in the Foreclosure Action. The Receiver himself has testified that if the AV Hamilton contract were not approved, he 'would target a sale price of closer to $22 million.' Paulus Decl. (Dkt. 18-1) ¶ 10. The Purchaser's $24,000,000 offer exceeds the Receiver's own estimate by approximately $2,000,000.

50. Paragraph 8 of the Receiver's contract provides that, "the Seller shall deliver title to the Premises free and clear of all liens, taxes, claims and other Encumbrances." AV Hamilton, LLC is assuming no debt under its contract with the Receiver.

51. The Debtor further reasonably believes that the total consideration to be paid for the Sale Assets by the Purchaser is fair and reasonable and will provide the best opportunity to maximize the value of the Sale Assets for the benefit of the Debtor's estate. To ensure the highest and best offer, however, the sale is expressly subject to higher and better offers as part of the § 363 sale process. The Debtor believes there is no better evidence of value than what the market will bear. The sale process that has occurred and proposed herein promotes the likelihood that the Debtor will receive the maximum value for the Sale Assets and that the purchase price the estate realizes will be fair and reasonable.

52. The form and manner of notice of the Motion and the procedures used for soliciting higher and better offers for the Sale Assets have been submitted to the Court for approval and, if approved, will ensure that any and all interested parties will receive adequate notice of the Sale to allow for a competitive sale process.

*53.* Based upon the foregoing, the Debtor respectfully submits that the sale of the estate's interest in the Sale Assets to the Purchaser on the terms set forth in this Application are fair, reasonable,

equitable and in the best interest of creditors of the estate. The Debtor further respectfully submits that the proposed sale comports with the standard set forth in 11 U.S.C. §363(b) and the *Abbotts Dairies* *d*ecision.

***The Sales Should be Free and Clear of Liens, Claims, Encumbrances and Interests***

54. The Debtor requests authorization to sell the Sale Assets free and clear of liens, claims, encumbrances and interests except for the leases of the tenants. Section 363(f) of the Bankruptcy Code authorizes a Debtor to sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied:

> (i) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;
>
> (ii) such entity consents;
>
> (iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (iv) such interest is in bona fide dispute; or
>
> (v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

55. To facilitate the sale of the Sale Assets, the Debtor requests authorization to sell free and clear of any and all liens or interests that may be asserted, with such liens to attach to the sale proceeds. Applicable case law provides that a sale of a debtor's assets free and clear of all liens, claims, encumbrances and interests is permissible under section 363(f) if the liens, claims, encumbrances and interests attach to the net proceeds of the sale. See: *Foyer Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000) ("The holdings of the courts suggest that any interest in property that can be reduced to a money satisfaction constitutes a claim for purposes of section 363(f) and, therefore, attaches to the proceeds of the sale."); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

56. Here, all parties asserting an interest in the Sale Assets will have notice of the sale and an opportunity to object. The absence of objection is tantamount to consent. See: *Hargrave v. Township of*

*Pemberton (In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, secured creditor deemed to consent under section 363(f)(2)); *Pelican Homestead v. Wooten (In Re Babel*), 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same); *In re AmeriKing, Inc., et al.*, Case No. 02-13515 (LHK) (D. Del. Dec. 4, 2002) (order entered deeming non-objecting secured creditors to have consented to sale under section 363(f); *In re Mobile Tool International Inc., et al.*, Case No. 02-12826 (MFW) (Bankr. D. Del. Oct. 23, 2002) (same); *In re GST Telecom, Inc*., Case No. 00-1982 (GMS) (D. Del. Sept. 21, 2000) (same). Furthermore, the provisions of 363(f) are satisfied because all such liens and encumbrances shall attach to the proceeds in the same order and priority they held against the Sale Assets.

***Purchaser is a Good Faith Purchaser***

57. To further facilitate the Sale, the Debtor requests that the Court rule that the Purchaser is a good faith purchaser. As such, the Debtor will request that the Court make a finding at the Sale Hearing that the Purchaser has acted in good faith within the meaning of section 363(m) of the Bankruptcy Code.

58. While the Bankruptcy Code does not define "good faith," the Third Circuit, in *Abbotts Dairies*, 788 F.2d at 147, has held that:

> [t]he requirement that a purchaser act in good faith ... speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders. (citations omitted).

59. Mr. Pavicic, the Debtor’s 85% member, and Mr. Coppotelli, the principal of the Purchaser, know each other through an unrelated development project on which Mr. Pavicic serves as general contractor and in which Mr. Coppotelli is a passive investor. Neither Mr. Pavicic nor any entity he controls holds any interest in the Purchaser, will receive any compensation or other benefit from the Purchaser in connection with this sale, or has any agreement with the Purchaser or Mr. Coppotelli relating to the

Property. The members of the Debtor have no ownership or other economic stake in the Purchaser. The sole consideration to be paid for the Sale Assets will be paid to the Debtor.

***Assignment and Assumption of leases***

60. The Debtor has entered into multiple leases with tenants in the Property. In addition to the restaurant, there are residential leases. Some are subleases in which the tenant has rented from one of the Debtor's tenants.

61. The Debtor submits that the Tenant Leases are executory contracts and unexpired leases within the meaning of § 365. Although courts are split on whether a lease where tenant is in possession remains executory as to a debtor-lessor, the majority view and the better-reasoned view in this District treats material ongoing obligations on both sides — Debtor's obligations to maintain premises, provide services, maintain insurance, hold security deposits in compliance with N.J.S.A. 46:8-19, and Tenant's obligations to pay rent, comply with rules, maintain unit — as rendering the lease executory. See *In re The Bon-Ton Stores, Inc.*, Case No. 18-10248 (Bankr. D. Del.); *In re Fleming Cos., Inc.*, 499 F.3d 300 (3d Cir. 2007) (functional approach to executory contracts).

62. Even if the Court were to find the leases to be non-executory unexpired leases of real property, assumption and assignment is still authorized under § 365 and the Court retains authority to approve assignment as part of a § 363(b) sale subject to tenants' rights under § 365(h) and adequate protection under § 363(e). The Debtor proceeds in the alternative under both sections to avoid any argument that a § 363(f) sale strips tenants leases.

63. The Tenant Leases do not contain anti-assignment provisions enforceable against the Debtor. Section 365(f)(1) and (3) render unenforceable any provision that prohibits, restricts, or conditions assignment. Because the leases expressly permit landlord assignment, no such prohibition exists here.

64. The Debtor believes and contends that it has performed all of its obligations as landlord and that it is not in breach of any of the leases. The Receiver has been operating the Property since August of 2025 and should know if any tenant has claimed that its lease has been breached.

65. All tenants will be served with this motion and are put on notice that if they either contend that they have claims against the Debtor, or they object to the assignment of their lease to the Purchaser, they must respond to this Motion, failing which, any claims they have will be barred and they will have no right to object to the assignment of their leases to the Purchaser. They will also be served with a separate plain-language notice in both English and Spanish which state the foregoing, pro forma copies of which are annexed hereto as **Exhibit C**.

66. The Bankruptcy Code permits assumption and assignment of executory contracts. Section 365(f)(1) states:

> Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection; except that the trustee may not assign an unexpired lease of nonresidential real property under which the debtor is an affected air carrier that is the lessee of an aircraft terminal or aircraft gate if there has occurred a termination event.
>
> **(2)** The trustee may assign an executory contract or unexpired lease of the debtor only if—
>
> **(A)** the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> **(B)** adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

67. The only limitation on the Debtor's right to assume and assign a contract is the requirement that the Debtor demonstrate adequate assurance of the ability to perform. Such assurance is provided by demonstrating the availability of funding to complete the purchase. See, *In re Health Science Products, Inc.*, Bkrtcy.N.D.Ala.1995, 191 B.R. 895; *Matter of Bronx-Westchester Mack Corp.*,

Bkrtcy.S.D.N.Y.1982, 20 B.R. 139. Under § 365(a), a debtor-in-possession may assume executory contracts subject to court approval, applying business judgment. *In re Bildisco*, 465 U.S. 513 (1984).

68. Under § 365(b)(1), where there has been a default, the debtor may not assume unless it at the time of assumption:

(A) cures, or provides adequate assurance that it will promptly cure, such default;

(B) compensates, or provides adequate assurance of prompt compensation, for pecuniary loss; and

(C) provides adequate assurance of future performance.

69. <u>Cure</u>. The Debtor asserts there are no material monetary defaults under Tenant Leases with the possible exception of security deposits. The Receiver will have to provide an accounting of the security deposits, how many there are and how many require funding. To the extent any defaults exist, including failure to maintain or account for security deposits and interest under N.J.S.A. 46:8-19, the Debtor will cure by:

a. Transferring to Purchaser at closing all security deposits held plus accrued interest as required by N.J.S.A. 46:8-20;

b. Adjust the purchase price to allow any shortfall in security deposits to be funded;

b. Providing a full accounting to any tenants requesting one;

c. Paying any pre-petition amounts owed for services/utilities that are landlord obligations under leases.

70. The Debtor proposes a cure amount of $0.00 for each Tenant. Any tenant asserting entitlement to a different cure amount must file an objection pursuant to LBR 6006-1.

71. Adequate Assurance - Assignee. Section 365(f)(2)(B) requires adequate assurance of future performance by the assignee, whether or not there has been a default. See 11 U.S.C. § 365(f)(2)(B); *In re*

*Bygolly*, 46 B.R. 53 (Bankr. D.N.J. 1984). The Purchaser expressly assumes and agrees to perform all landlord obligations under tenant leases from and after closing. This satisfies adequate assurance for residential leases. The Code does not require absolute guarantee, only practical assurance that assignee can perform. See *In re Carlisle Homes*, 103 B.R. 524 (Bankr. D.N.J. 1988). The heightened shopping center requirements under § 365(b)(3) do not apply because the Property is primarily residential.

72. Notice. Pursuant to Bankruptcy Rules 2002, 6004, 6006 and LBR 6004-2, 6006-1, Debtor will serve this Application, Sale Order, and cure notice on all tenants, all lienholders, and the U.S. Trustee. Tenants may object to the proposed cure amount or to the assignment of their lease by the deadline set in the Order Shortening Time. See LBR 6006-1.

73. The Debtor submits that the Purchaser is financially sound has provided adequate assurance of its ability to perform the obligations it will assume under the Leases. The Debtor reserves the right to supplement its proffer of adequate assurance in the event any party objects to the assumption and assignment of any Assigned Contract.

**HEARING DATE**

74. The Debtor requests that the hearing to approve the sale of the Sale Assets and entertain any higher or better offers be scheduled for October 27, 2026 or such other date as the Court deems appropriate.

75. Time is of the essence. The Purchaser must close on or before December 18, 2026 to complete a tax-deferred exchange, and its lender requires approximately 45 days to complete due diligence. A prompt hearing is necessary to preserve the transaction and the approximately $1.91 million benefit it provides to the estate over the Receiver's contract.

76. The Debtor is simultaneously filing a motion to shorten time.

**NOTICE PROCEDURES**

77. Notice of this Motion and supporting documents will be given to the following (the "**Notice Parties**"):

| |
|---|
| • Office of the United States Trustee for the District of New Jersey |
| • All parties who have formally appeared and requested service in this proceeding |
| • The United States Attorney's Office for the State of New Jersey |
| • The Internal Revenue Service |
| • The Attorney General's Office for the State of New Jersey |
| • All parties that have liens of record on any of the assets to be sold |
| • All tenants and parties to leases and executory contracts to be assumed and assigned |
| • Township of Franklin, Somerset County (Tax Collector) |
| • Counsel for the Township of Franklin |
| • Counsel for Bank of Hope |
| • AV Hamilton, LLC, Receiver's buyer |
| • Timothy Paulus, Esq., Receiver, and Wick Companies, LLC |
| • G2 Finance, LLC |
| • Honors Review Princeton, LLC and Lighthouse On, LLC |

78. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

79. Notice to the Notice Parties will be given in accordance within the time and in the manner as directed by the Order entered in response to the Debtor's application to shorten time that is being filed simultaneously with the Motion.

## NO PRIOR REQUEST

80. No prior request for the relief sought in this Motion has been made to this court.

Dated: October 20, 2026

BROEGE, NEUMANN, FISCHER & SHAVER, LLC
*Attorneys for Debtor-in-Possession*
*Hamilton Street Associates, LLC*

By: /s/ *Timothy P. Neumann*
TIMOTHY P. NEUMANN

**VERIFICATION**

Based upon my information and belief, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 20, 2026

/s/ *Perry Pavicic*
Perry Pavicic